UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUSSELL L. SANFORD, JR.,

    Plaintiff,

v.   Case No. 8:24-cv-2283-WFJ-LSG

SHERIFF GRADY JUDD,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court on Defendant Sheriff Grady Judd's motion to dismiss *pro se* Plaintiff Russell L. Sanford, Jr.'s second amended complaint. (Doc. 37). Mr. Sanford filed a response in opposition. (Doc. 44). For the reasons stated below, Sheriff Judd's motion to dismiss is **GRANTED in part** and **DENIED in part**.

**I.   Background**

For purposes of this motion, the Court accepts the factual allegations in the second amended complaint as true. Mr. Sanford is a Florida prisoner serving a twenty-year sentence for robbery with a firearm. Before he was convicted, he was a pretrial detainee at the Polk County Jail. (Doc. 29 at 4). In his complaint, Mr. Sanford challenges a variety of jail conditions, claiming that they violated his "constitutional" and "civil rights." (*Id.* at 12). Specifically, he alleges that (1) he was "denied dental care" and a "daily vitamin," (2) he was not allowed "contact visits," (3) the jail imposed a "full ban on newspapers and magazines" with the sole exception of USA Today, (4) he was denied "church services,"

(5) he spent five years in "max custody," which entailed twenty-three hour lockdowns, and (6) he was charged a $45 booking fee and a daily fee of $2 for housing. (*Id.* at 12-15). According to Mr. Sanford, each of these conditions resulted from an "official policy of the Polk County Sheriff's Department." (*Id.* at 4). Mr. Sanford sues Sheriff Judd in his official capacity, seeking monetary damages for the alleged violation of his rights. (*Id.* at 2, 5).

## II. Standard of Review

A complaint withstands dismissal under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration should be limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## III. Analysis

Sheriff Judd moves to dismiss the complaint, arguing that Mr. Sanford fails to state a plausible claim for relief. (Doc. 37 at 6-11). The Court considers each of Mr. Sanford's claims in turn.[1]

---

[1] Sheriff Judd also argues that the complaint must be dismissed because Mr. Sanford's "allegations fail to establish exhaustion." (Doc. 37 at 5). This argument lacks merit. Mr. Sanford alleges in his complaint that he exhausted his administrative remedies by filing "multiple grievances over multiple years." (Doc. 29 at 7). As Sheriff Judd points out, Mr. Sanford did not provide "copies of such grievances," nor did he allege "when he filed the grievance[s], what he stated in the grievance[s], or whether he appealed the

### A. Denial of Dental Care and Daily Vitamin

Mr. Sanford alleges that, during his time at the Polk County Jail, he was "denied any type of dental care other than to have teeth pulled."[2] (Doc. 44 at 5). This allegedly reflected the "official jail policy to not give any dental care except for the pulling of teeth." (Doc. 29 at 12; *see also* Doc. 44 at 6 ("[T]he official policy of the Polk County Jail is to pull teeth[;] no drilling, no fillings[,] and no preventative care.")). According to Mr. Sanford, two of his teeth were removed under the policy, but one "only needed a filling and crown." (Doc. 44 at 5). Mr. Sanford was allegedly "in so much pain he had no choice but to have [that tooth] pulled." (*Id.*) In addition, because extraction was the only dental care available to inmates, Mr. Sanford developed "prolific cavities and [now] needs extensive dental work." (*Id.*)

Mr. Sanford separately alleges that, during a visit to "the state hospital," he was "prescribed a daily vitamin because of poor diet [and] a vitamin deficiency." (Doc. 29 at

---

grievance[s]." (Doc. 37 at 5). But these pleading gaps do not require dismissal because an inmate "need not specially plead or demonstrate exhaustion in [his] complaint." *Maldonado v. Baker Cnty. Sheriff's Off.*, 23 F.4th 1299, 1307 (11th Cir. 2022). Thus, Mr. Sanford "was under no obligation to affirmatively demonstrate he exhausted his administrative remedies," and his failure to submit documentation of his exhaustion efforts—or to provide additional information about his grievances—does not warrant dismissal. *Hill v. Prock*, No. 3:22-cv-866-BJD-PDB, 2024 WL 4008106, at *3 (M.D. Fla. Aug. 30, 2024).

[2] This allegation is contained in Mr. Sanford's opposition to the motion to dismiss. "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *see also Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("[A] district court errs in failing to consider a *pro se* litigant's complaint in light of all filings, including filings responsive to a motion to dismiss."). Accordingly, the Court considers the allegations in Mr. Sanford's opposition in ruling on the motion to dismiss. *See Williams v. Mercado*, No. 3:16-cv-689-MMH-PDB, 2018 WL 467232, at *4 n.5 (M.D. Fla. Jan. 18, 2018) (holding that, "[i]n light of [plaintiff's] *pro se* status," the court would "consider [p]laintiff's newly asserted allegations" in his opposition to motion to dismiss); *Gueh v. Green*, No. 5:15-cv-386-CAR-CHW, 2016 WL 7757273, at *3 (M.D. Ga. Dec. 2, 2016) (noting that "[c]ourts in this Circuit have consistently held that additional facts presented in *pro se* responses to motions to dismiss . . . may be reviewed by the court"), adopted by 2017 WL 151396 (M.D. Ga. Jan. 13, 2017).

13). When he returned to the jail, "the vitamins were stopped" pursuant to "an official jail policy that medical does not carry[ ] or give a daily vitamin." (*Id.*)

These allegations are sufficient to state a claim for deliberate indifference to serious medical needs. "Like prisoners, pretrial detainees have a right to receive medical treatment for their illnesses and injuries." *Christmas v. Nabors*, 76 F.4th 1320, 1335 (11th Cir. 2023). "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). Because Mr. Sanford sues Sheriff Judd in his official capacity, liability does not attach unless an "official policy [was] responsible for [the] deprivation of civil rights." *Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016). Mr. Sanford can meet that burden "by proving a policy of deficiencies in staffing or procedures such that the inmate is effectively denied access to adequate medical care." *Anderson v. City of Atlanta*, 778 F.2d 678, 686 n.12 (11th Cir. 1985).

Mr. Sanford alleges that he suffered from (1) a vitamin deficiency for which he was prescribed a "daily vitamin," and (2) "prolific cavities" that caused "dental pain." (Doc. 44 at 5; Doc. 29 at 13). These conditions qualify as serious medical needs. *See Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019) (noting that "[a] serious medical need is one that has been diagnosed by a physician as mandating treatment"); *McClain v. Danzig*, No. 2:15-cv-594-SPC-UAM, 2019 WL 1102184, at *4 (M.D. Fla. Mar. 8, 2019) ("The courts have universally agreed that a dental problem of whatever nature that results in substantial pain qualifies as a serious medical need." (collecting cases)). Moreover, Mr. Sanford

sufficiently alleges that he was "denied access to" adequate treatment for his conditions due to "a policy of deficiencies in staffing or procedures." *Anderson*, 778 F.2d at 686 n.12. He claims that jail officials discontinued his daily vitamin because of an "official jail policy that medical does not carry[ ] or give a daily vitamin." (Doc. 29 at 13). Likewise, he alleges that he was denied appropriate treatment for his cavities due to an "official jail policy to not give any dental care except for the pulling of teeth." (*Id.* at 12). At the motion-to-dismiss stage, these allegations are sufficient to plead "polic[ies] that if implemented constituted deliberate indifference to" serious medical needs. *Grissom v. Corizon, LLC*, No. 2:19-cv-420-RAH-KFP, 2022 WL 4290748, at *6 (M.D. Ala. Sept. 16, 2022); *see also Sutherland v. St. Lawrence*, No. 4:07-cv-096, 2009 WL 2900270, at *6 (S.D. Ga. Aug. 17, 2009) ("Some courts have suggested that official extraction-only [dental] policies are constitutionally deficient, since they smack of cost-saving delay tactics to discourage detainees from receiving admittedly necessary treatment. . . ." (collecting cases)), *adopted by* 2009 WL 2914314 (S.D. Ga. Aug. 31, 2009).

**B.  Denial of Contact Visits**

Mr. Sanford alleges that the Polk County Jail adopted a policy that forbade "contact visitations." (Doc. 44 at 7). Instead, Sheriff Judd allowed only "video visitations." (*Id.*) As a result, Mr. Sanford was held in pretrial detention for several years "without hugs from his mother or sister [or] the chance to say goodbye in a meaningful manner to dying family members." (*Id.*)

This claim fails because "neither prisoners nor their visitors have a constitutional right to visitation." *Wynn v. Davis*, No. 5:13-cv-19 MTT, 2013 WL 2253213, at *4 (M.D.

Ga. May 22, 2013); *see also Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir. 1994) (noting that "prisoners ha[ve] no constitutional right" to "contact visitation privileges"); *Syncate-El v. Toombs*, 978 F.2d 1259, 1259 (6th Cir. 1992) ("It is well settled that there is no inherent constitutionally protected right of prisoners to contact visits."). Moreover, Mr. Sanford does not allege that he was denied all visitation privileges. Indeed, he admits that the jail allowed "video visitations." (Doc. 44 at 7). Therefore, Mr. Sanford's allegations fail to state a constitutional violation. *See Dixon v. Atwood*, No. 24-cv-2-RAW-DES, 2025 WL 948302, at *4 (E.D. Okla. Mar. 28, 2025) ("To the extent Plaintiff complains he has only been permitted one, virtual visit a month, he fails to state a constitutional violation."); *Clemons v. Rowland*, No. 1:24-cv-55, 2025 WL 379887, at *4 (M.D. Tenn. Feb. 3, 2025) (dismissing plaintiff's "claim that he was denied contact visits" and noting that jail officials "permitted" "video visitations").

### C. Restrictions on Newspapers and Magazines

Mr. Sanford alleges that his First Amendment rights were violated by the Polk County Jail's policy on "newspapers and magazines." (Doc. 29 at 13). According to Mr. Sanford, the jail adopted a "full ban on newspapers and magazines" with the sole exception of USA Today. (*Id.*) Mr. Sanford describes USA Today as a "left leaning" newspaper that "supports politic[al] causes [he does] not agree with." (*Id.*) He also alleges that jail officials provided only one copy of USA Today "for two hundred men." (*Id.*)

Contrary to Sheriff Judd's assertion, these allegations are sufficient to plead a First Amendment claim. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d

954, 964 (11th Cir. 2018). For example, inmates "have a First Amendment right to send and receive mail and to receive and possess publications." *Torres v. Fla. Dep't of Corr.*, 742 F. App'x 403, 405-06 (11th Cir. 2018). "But that right is limited." *Prison Legal News*, 890 F.3d at 965. "[A] prison regulation affecting constitutional rights is valid as long as it is reasonably related to legitimate penological interests." *Id.* To make that determination, courts ask "(1) whether there is a valid, rational connection between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an exaggerated response to prison concerns." *Hakim v. Hicks*, 223 F.3d 1244, 1247-48 (11th Cir. 2000).

At this early stage of the litigation, the Court "cannot evaluate whether the alleged restrictions on [Mr. Sanford's First Amendment rights] were reasonable in light of the[se] four . . . factors." *Johnson v. Brown*, 581 F. App'x 777, 781 (11th Cir. 2014); *see also Althouse v. Palm Beach Cnty. Sheriff's Off.*, No. 12-80135-CIV, 2012 WL 4458287, at *2 (S.D. Fla. Sept. 21, 2012) ("[W]hether [an allegedly unconstitutional prison] policy is 'reasonably related to legitimate penological interests' is a question of fact that is not appropriate for resolution as a matter of law at the motion to dismiss stage."). Indeed, Sheriff Judd does not offer any meaningful argument as to whether the restrictions on newspapers and magazines survive review under the relevant factors. (Doc. 37 at 9). Thus, the Court cannot yet determine "whether and the extent to which accommodation of the

asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally." *Hakim*, 223 F.3d at 1247. Nor can the Court evaluate whether the challenged policies "represent[ ] an exaggerated response to prison concerns." *Id.* at 1248. In these circumstances, "the facts surrounding [the] justification for [the challenged policies] must be developed to determine whether impermissible infringement has occurred." *Saleem v. Evans*, 866 F.2d 1313, 1317 (11th Cir. 1989).

### D. Denial of Religious Services

Mr. Sanford alleges that he is a "Christian raised as a Southern Baptist." (Doc. 29 at 14). According to Mr. Sanford, "fellowship and services are a part of life" for Southern Baptists. (*Id.*) Yet the Polk County Jail allegedly lacked a chaplain, and Mr. Sanford "sometimes went a whole year without services"—for example, Bible study and "fellowship meetings." (*Id.*; Doc. 44 at 9). Moreover, the jail never held services "for Easter or Christmas." (Doc. 29 at 14). These deficiencies allegedly stemmed from an "official policy of the Polk County Sheriff's Department." (*Id.* at 4). Based on these allegations, Mr. Sanford claims that Sheriff Judd violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Doc. 44 at 9).

Mr. Sanford states a plausible claim under the Free Exercise Clause of the First Amendment. "To plead a valid free exercise claim, [a plaintiff] must allege that the government has impermissibly burdened one of his sincerely held religious beliefs." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007). "Although prison inmates retain protections afforded by the First Amendment's Free Exercise Clause, prison officials may impose limitations on an inmate's exercise of sincerely held religious beliefs if the

limitations are 'reasonably related to legitimate penological interests.'" *Johnson*, 581 F. App'x at 780 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

Mr. Sanford alleges that, to meet his religious duties as a Southern Baptist, he needed to participate in "fellowship and services," including Bible study and celebrations of Christian holidays. (Doc. 29 at 14; Doc. 44 at 9). As a result of jail policy, however, Mr. Sanford "sometimes went a whole year without" Bible study and "fellowship meetings," and the jail never held services "for Easter or Christmas." (*Id.*) Taken as true, these allegations are sufficient to plead that "the government . . . impermissibly burdened one of [Mr. Sanford's] sincerely held religious beliefs." *Watts*, 495 F.3d at 1294. The question becomes whether the alleged deficiencies in religious services were "reasonably related to legitimate penological interests." *Johnson*, 581 F. App'x at 780. That fact-intensive question cannot be resolved on a motion to dismiss. *See Saleem*, 866 F.2d at 1316-17 (prisoner's free exercise claim should not be dismissed for failure to state a claim unless the complaint's allegations show the state has a legitimate justification for regulating a prisoner's religious practices or the claim is "so facially idiosyncratic" that no state justification is required); *Tootle v. Long*, No. 1:20-cv-235-SPB-RAL, 2021 WL 3610034, at *5 (W.D. Pa. July 19, 2021) ("[O]ften a factual record is necessary to assess whether the regulation or practice is reasonably related to legitimate penological interests."), *adopted by* 2021 WL 3603621 (W.D. Pa. Aug. 13, 2021).

Mr. Sanford also seeks to proceed under RLUIPA. RLUIPA "provides greater religious protection than the First Amendment." *Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022). Because he adequately alleges a First Amendment claim, Mr. Sanford

necessarily states a claim under RLUIPA as well. *See Stepler v. Warden, Hocking Corr. Facility*, No. 2:12-cv-1209, 2013 WL 3147953, at *12 (S.D. Ohio June 18, 2013) ("Having concluded that plaintiff's First Amendment claim may proceed, the Court also finds that, at this stage, plaintiff's allegations in this regard are sufficient to state a claim under RLUIPA."). The Court notes, however, that Mr. Sanford "may obtain only nominal damages, not compensatory or punitive damages, to the extent [he] assert[s] claims against [Sheriff Judd] under RLUIPA in [his] official capacit[y]." *Brown v. Tony*, No. 0:23-CV-60033-KMM, 2023 WL 7482788, at *4 (S.D. Fla. July 25, 2023), *adopted by* 2023 WL 6973026 (S.D. Fla. Oct. 23, 2023).

### E. Placement in Maximum Security Unit

Mr. Sanford alleges that he was "held in max custody" for five years at the Polk County Jail. (Doc. 29 at 12). During this time, he was on lockdown twenty-three hours per day, and he shared a 112-square-foot cell with two other inmates. (*Id.*; Doc. 44 at 3). The only "reason" for the placement in maximum security was Mr. Sanford's "charges"—robbery with a firearm. (Doc. 29 at 12). Based on these allegations, Mr. Sanford asserts a conditions-of-confinement claim against Sheriff Judd. (*Id.*)

A plaintiff seeking to show unconstitutional conditions of confinement must clear a "high bar" by demonstrating "extreme deprivations." *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004). A deprivation is "extreme" if it "objectively exposes the [inmate] to a substantial risk of serious harm." *Christmas*, 76 F.4th at 1331. This standard guarantees that inmates will not be "depriv[ed] of the minimal civilized measure of life's necessities, or the basic human needs, including reasonably adequate food, clothing, shelter, and

sanitation." *Quintanilla v. Bryson*, 730 F. App'x 738, 746 (11th Cir. 2018) (citations omitted).

Mr. Sanford fails to adequately allege that the conditions in maximum security "pose[d] an unreasonable risk of serious damage to his future health or safety." *Chandler*, 379 F.3d at 1289. Placement in "administrative segregation" is not necessarily unconstitutional. *Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at *10 (11th Cir. Apr. 15, 2022). Likewise, "[d]ouble or triple celling of inmates is not per se unconstitutional." *Holmes v. Watts*, No. 2:15-cv-155, 2016 WL 205401, at *4 (S.D. Ga. Jan. 15, 2016) (collecting cases), *adopted by* 2016 WL 1064581 (S.D. Ga. Mar. 14, 2016); *see also Bright v. Wilcher*, No. 4:17-cv-194, 2018 WL 6438595, at *4 (S.D. Ga. Oct. 17, 2018) ("[C]onfinement to a 108 square foot cell with two others for sleeping is not enough to muster an overcrowding claim."), *adopted by* 2018 WL 6435886 (S.D. Ga. Dec. 7, 2018). Mr. Sanford was allegedly confined to his cell for twenty-three hours per day, but he does not claim that jail officials denied him "the minimal civilized measure of life's necessities." *Quintanilla*, 730 F. App'x at 746. Nor does he plead that he was deprived of all forms of social interaction or recreation. Therefore, he fails to allege that he experienced "extreme deprivations" during his time in maximum security. *Chandler*, 379 F.3d at 1298; *see also LaVergne v. Stutes*, 82 F.4th 433, 436-37 (5th Cir. 2023) ("Nor did confinement to a cell for twenty-three hours per day [for five years] violate the Eighth Amendment where the inmate nonetheless could converse with other inmates, receive visitors, and engage in some form of exercise or other recreation."); *Hill v. Pugh*, 75 F. App'x 715, 721 (10th Cir. 2003) (plaintiff's isolation "in his cell twenty-three hours a day for five days a

week and twenty-four hours the remaining two days" was insufficient to state a claim because prison officials met "his minimal physical requirements—food, shelter, clothing[,] and warmth").

### F. Housing Fees

Lastly, Mr. Sanford challenges the Polk County Jail's policy of charging inmates a $45 booking fee and a daily fee of $2 "for housing." (Doc. 29 at 14). He claims that inmates unable to pay these fees were forbidden to "use the canteen account"—allegedly a "clear violation of the Eighth and Fourteenth Amendments." (*Id.* at 15).

These allegations do not state a claim for relief. First, "[c]ourts have generally held that charging inmates for room and board to defray costs of incarceration fails to state an actionable constitutional claim." *Hooks v. State of Kentucky*, No. 3:16-cv-187-CRS, 2016 WL 4180003, at *3 (W.D. Ky. Aug. 5, 2016); *see also Meeker v. Buskirk*, No. 18-cv-757, 2018 WL 2331906, at *4 (E.D. Pa. May 22, 2018) ("Courts have generally upheld programs that require inmates to share in the cost of their incarceration . . . ."). Second, Mr. Sanford "has no constitutional right to use the canteen." *Brown v. Aramark Corr. Servs.*, LLC, No. 8:19-cv-468-WFJ-AAS, 2019 WL 2423977, at *2 (M.D. Fla. June 10, 2019); *see also Scott v. Aramark*, No. 3:22-cv-22212-LC-HTC, 2023 WL 2410907, at *2 (N.D. Fla. Jan. 30, 2023) ("[A] prisoner has no constitutional right to the use of a prison commissary."), *adopted by* 2023 WL 2403776 (N.D. Fla. Mar. 8, 2023).

### IV. Conclusion

Accordingly, it is **ORDERED** that:

1. Sheriff Judd's motion to dismiss, (Doc. 37), is **GRANTED in part** and **DENIED in part**.

    a. Mr. Sanford's claims based on the denial of contact visits, his placement in maximum security, and the imposition of housing fees are **DISMISSED**.

    b. This action will **PROCEED** on Mr. Sanford's claims based on the denial of dental care and a daily vitamin, the restrictions on newspapers and magazines, and the denial of religious services.

2. Sheriff Judd must answer the remaining claims in the second amended complaint, (Doc. 29), within fourteen days of the date of this order.

**DONE** and **ORDERED** in Tampa, Florida, on October 28, 2025.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE