**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RUSSELL L. SANFORD, JR.,

Plaintiff,

v. Case No. 8:24-cv-2283-WFJ-LSG

SHERIFF GRADY JUDD,

Defendant.
_______________________________________/

**ORDER**

THIS CAUSE comes before the Court on *pro se* Plaintiff Russell L. Sanford, Jr.'s motion to compel discovery. (Doc. 106). Defendant Sheriff Grady Judd filed a response in opposition. (Doc. 110). For the reasons stated below, the motion to compel is **GRANTED in part** and **DENIED in part**.

## I. Background

Mr. Sanford is a Florida prisoner serving a twenty-year sentence for robbery with a firearm. Before he was convicted, he was a pretrial detainee at the Polk County Jail. (Doc. 29 at 4). In the operative complaint, Mr. Sanford challenges a variety of jail conditions, claiming that they violated his "constitutional" and "civil rights." (*Id.* at 12). Three claims survived Sheriff Judd's motion to dismiss. (Doc. 48 at 13). In these claims, Mr. Sanford alleges that (1) he was "denied dental care" and a "daily vitamin," (2) the jail imposed a "full ban on newspapers and magazines" except for one copy of USA Today for "two hundred men," and (3) he was denied "church services." (Doc. 29 at 12-15). According to

Mr. Sanford, each of these conditions resulted from an "official policy of the Polk County Sheriff's Department." (*Id.* at 4). Mr. Sanford sues Sheriff Judd in his official capacity, seeking monetary damages for the alleged violation of his rights. (*Id.* at 2, 5).

## II. Standard of Review

A party may obtain discovery about any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Discovery helps parties ascertain facts that are relevant to the issues. *ACLU of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1340 (11th Cir. 2017). A party may move for an order compelling discovery from the opposing party. Fed. R. Civ. P. 37(a). The party moving to compel discovery has the initial burden of proving the requested discovery is relevant and proportional. *Douglas v. Kohl's Dept. Stores, Inc.*, No. 6:15-CV-1185-ACC-TBS, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016). The responding party must then specifically show how the requested discovery is unreasonable or unduly burdensome. *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559-60 (11th Cir. 1985).

## III. Analysis

Mr. Sanford moves to compel discovery on several topics. The Court addresses each in turn.

### A. Non-Party Discovery

Mr. Sanford seeks to compel the production of certain documents in the possession of non-parties. (Doc. 106 at 1-2). The documents include "dental" and "medical" records held by the jail's medical provider, and various grievances and request forms held by SmartJailMail. (Doc. 110-1 at 4).

Mr. Sanford's request is denied because there is no indication that he has served subpoenas requesting these documents from the relevant non-parties.[1] As the Court previously explained to Mr. Sanford, (Doc. 66), he must follow the procedures set out in Federal Rule of Civil Procedure 45 if he wishes to obtain discovery from a non-party. First, he must request that the Clerk of Court issue him a blank subpoena on form AO 88B. Fed. R. Civ. P. 45(a)(3). After completing the form (but before the subpoena is served), Mr. Sanford must provide notice to Sheriff Judd. Fed. R. Civ. P. 45(a)(4). While the Court may in appropriate circumstances direct the United States Marshals Service to serve a subpoena on behalf of a party, all prisoners—even those proceeding *in forma pauperis* ("IFP")—must pay their own costs of discovery, including any applicable service fees. *See Easley v. Dep't of Corr.*, 590 F. App'x 860, 868 (11th Cir. 2014).

**B. Requests for Admission Concerning Newspapers and Church Services**

Mr. Sanford alleges that Sheriff Judd improperly refused to respond to his requests for admission concerning access to the newspaper and church services. (Doc. 106 at 1).

With respect to church services, Mr. Sanford's argument fails because Sheriff Judd adequately responded to the relevant requests for admission. Specifically, in request for admission no. 12, Mr. Sanford asked Sheriff Judd to admit that "the [v]olunteers who perform church services are allowed only during the 8:00 p.m. to 9:00 p.m. hour." (Doc. 110-4 at 5). Sheriff Judd responded: "Denied. The Polk County Sheriff's Office does not

[1] Mr. Sanford has not rebutted Sheriff Judd's representation that he is not in possession, custody, or control of the requested documents. *See Freeman v. Sample*, 814 F. App'x 455, 459 (11th Cir. 2020) (affirming denial of prisoner-plaintiff's motion to compel because he offered no basis to conclude that responsive documents were in defendants' possession).

maintain a policy limiting religious volunteers to conduct services only during the 8:00 p.m. to 9:00 p.m. hour. Ministers and lay ministers may register and conduct group services with approval and scheduling through detention counselors . . . ." (*Id.*) Additionally, in request for admission no. 15, Mr. Sanford sought an admission that "[i]nmates are only allowed to attend dorm services if their cell is out on rotation." (*Id.*) Sheriff Judd responded, "Denied. The Polk County Sheriff's Office does not maintain a policy providing that inmates may attend religious services only when their cell is on rotation. Movement of inmates within the facility, including attendance at programs or services, is governed by institutional security procedures, inmate classification levels, housing assignments, and operational considerations." (*Id.* at 6). Mr. Sanford offers no basis to conclude that these responses were inadequate.

With respect to newspaper access, however, the Court will order Sheriff Judd to file amended responses to two requests for admission. In request for admission no. 28, Mr. Sanford asked whether the Polk County Jail "allowed inmates to perform basic hygiene activities and check out the jail newspaper only while on rotation and while in holding cells." (*Id.* at 8). In request for admission no. 29, Mr. Sanford asked Sheriff Judd to admit that the "only time slots to request those activities were between 8:00 a.m. and 3:30 p.m." (*Id.*) Sheriff Judd refused to answer either request, claiming that no. 28 "concern[ed] housing procedures and inmate movement practices unrelated to any claim remaining in this action," and that no. 29 "concern[ed] operational procedures unrelated to any claim remaining in this action." (*Id.*)

To the extent the requests sought information about "basic hygiene activities," Sheriff Judd was not required to respond because the surviving claims in this action have nothing to do with inmates' ability to practice hygiene. But the requests sought relevant, discoverable information to the extent they inquired about inmates' access to the newspaper. One of the surviving claims is that Mr. Sanford's First Amendment rights were violated by the jail policy on "newspapers and magazines." (Doc. 29 at 13). According to Mr. Sanford, the jail imposed a "full ban on newspapers and magazines" except for one copy of USA Today for "two hundred men." (*Id.*) Under the First Amendment, this alleged policy "is valid as long as it is reasonably related to legitimate penological interests." *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 965 (11th Cir. 2018). As noted above, Mr. Sanford asked Sheriff Judd to admit that inmates could "check out the jail newspaper only while on rotation and while in holding cells," and that the only "time slots" for reading the newspaper "were between 8:00 a.m. and 3:30 p.m." (Doc. 110-4 at 8). These requests for admission sought discoverable information about the scope of the challenged newspaper policy. *See* Fed R. Civ. P. 26(b)(1).

Accordingly, within twenty-one days of this order, Sheriff Judd shall serve amended responses to requests for admission nos. 28 and 29. The amended responses must address whether, during Mr. Sanford's incarceration at the Polk County Jail, inmates could "check out the jail newspaper only while on rotation and while in holding cells," and whether the

only "time slots" for reading the newspaper "were between 8:00 a.m. and 3:30 p.m."[2] (Doc. 110-4 at 8).

**C. Names of Dental Staff and Mr. Sanford's Mental Health Treatment**

Mr. Sanford alleges that "he has asked for the names of all dental staff that have worked on [him]," but Sheriff Judd "never responded to this request." (Doc. 106 at 2). The proper mechanism for obtaining this information is an interrogatory under Rule 33. *See* Fed. R. Civ. P. 33. As Sheriff Judd points out, Mr. Sanford has not served an interrogatory requesting the names of dental personnel involved in his treatment at the jail. (Doc. 110 at 3). Accordingly, Mr. Sanford's request to compel discovery on this point is denied without prejudice to his right to serve an appropriately tailored interrogatory seeking the requested information.

Mr. Sanford separately asks the "defense" whether it "accept[s] . . . as factual and true" that he "was constantly undergoing psychological evaluation and treatment for competence while in the [jail] [and was] being put on psychotropics and antidepressants." (Doc. 106 at 2). Again, Mr. Sanford did not serve on Sheriff Judd a request for admission seeking this information. (Doc. 110 at 4). Thus, there is no basis to compel Sheriff Judd to provide a response. In any event, it does not appear that Mr. Sanford's mental health treatment while in jail is relevant to any of the surviving claims in this action. The motion

[2] Mr. Sanford also appears to contend that Sheriff Judd improperly refused to provide "information concerning the recreation yard structure and time allowed for use." (Doc. 106 at 2). But none of the surviving claims in this action relate to the recreation yard. Thus, any discovery on this issue would be irrelevant.

to compel is denied to the extent it seeks to order Sheriff Judd to respond to this request for admission.

**D. Depositions**

Lastly, Mr. Sanford alleges that Sheriff Judd "failed to respond" to his request that defense counsel "arrange[] . . . depositions of three employees of the Sheriff's Department." (Doc. 106 at 2). In response, Sheriff Judd represents that, although he "does not object in principle to [Mr. Sanford] pursuing depositions," Mr. Sanford "has not served notices of deposition, proposed dates, arranged for a court reporter, or otherwise complied with the procedural requirements necessary to schedule the requested depositions." (Doc. 110 at 4).

The Court acknowledges that Mr. Sanford is a *pro se* prisoner proceeding IFP. As noted above, however, the IFP statute does not "cover the costs of discovery." *Easley*, 590 F. App'x at 868. This means that Mr. Sanford is responsible for "providing a court reporter to take the deposition[s], paying the appropriate expenses, and making the appropriate arrangements." *Barber v. Krepp*, No. 1:15-cv-83, 2018 WL 9491217, at *3 (M.D. Ga. Jan. 10, 2018), *adopted by* 2018 WL 9491218 (M.D. Ga. Apr. 30, 2018); *see also Mendez v. Jarden Corp.*, No. 10-80966-CIV, 2011 WL 13227825, at *1 (S.D. Fla. Feb. 25, 2011) ("The [IFP] statute does not authorize the expenditure of public funds for a court-appointed deposition reporter to take depositions."). There is no indication that Mr. Sanford has made any of the financial or practical arrangements necessary to depose the employees. The

motion to compel is denied to the extent it seeks an order requiring Sheriff Judd to arrange depositions on behalf of Mr. Sanford.[3]

## IV. Conclusion

Accordingly, it is **ORDERED** that:

1. Mr. Sanford's motion to compel discovery, (Doc. 106), is **GRANTED in part** and **DENIED in part**.
   a. Within **twenty-one days** of this order, Sheriff Judd shall serve amended responses to requests for admission nos. 28 and 29 in accordance with the instructions set forth above.
   b. In all other respects, the motion is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida, on July 21, 2026.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

---

[3] In his motion, Mr. Sanford notes that he "sent to defense [counsel] holographic copies of some of the grievances and request[s] that he felt were relevant to the case." (Doc. 106 at 2). He then asks whether Sheriff Judd "receive[d] these copies," whether Sheriff Judd "receive[d] the oath swearing that they are true, factual[,] and accurate," and whether Sheriff Judd "accept[ed] these documents as factual and accurate." (*Id.*) These questions should be posed directly to defense counsel. They provide no basis for relief in the context of a motion to compel discovery.